No. 25-10381

**In the
United States Court of Appeals
for the Fifth Circuit**

---

**Salt and Light Energy Equipment, L.L.C.,**
*Plaintiff – Appellant,*

**v.**

**Origin Bancorp, Incorporated, *d/b/a* Origin Bank,**
*Defendant – Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
*Honorable David C. Godbey, Chief District Judge*

---

**Brief of Appellant**

---

Edward Jason Dennis
jdennis@lynnllp.com
Hayden G. Hanson
hhanson@lynnllp.com
**Lynn Pinker Hurst &
Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
P: 214-981-3800; F: 214-981-3839

## IDENTITY OF PARTIES AND COUNSEL

The counsel below of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.2 have an interest in the outcome of this case. Those representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiff/Appellant                     Salt and Light Energy
                                        Equipment, L.L.C.
                                        *represented by:*
                                        Edward Jason Dennis
                                        Hayden G. Hanson

                                        **LYNN PINKER HURST &
                                        SCHWEGMANN LLP**

Defendants/Appellees                    Origin Bancorp, Inc.

                                        Mazin A. Sbaiti
                                        Bradford John Robinson
                                        Griffin Simon Rubin
                                        Caleb Davis

                                        **Sbaiti & Company PLLC**

                                        */s/ Edward Jason Dennis*
                                        Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

SNLEE respectfully requests oral argument. Among the issues raised by SNLEE on appeal, one issue involves a the question of federal-court jurisdiction that has divided district courts throughout the circuit applying the decision in *Waters v. Browning-Ferris Indus.*, 252 F.3d 796 (5th Cir. 2001). Clarification of *Waters* is important to parties drafting and relying on commercial forum-selection clauses. Oral presentation will assist the Court in resolving these significant issues as well as the others raised by this appeal.

Likewise, this appeal also presents novel applications of jury trial waiver under Texas law and available damages under the Texas UCC.

# Table of Contents

Identity of Parties and Counsel ................................................................ ii

Statement Regarding Oral Argument .................................................... iii

Table of Contents ...................................................................................... iv

Table of Authorities ................................................................................ vii

Jurisdictional Statement ............................................................................ 1

Issues Presented .......................................................................................... 2

Statement of Facts ....................................................................................... 3

A. Parties and their Lending Transactions. ...................................... 3

B. Origin's August 2021 Collection Blitz ......................................... 4

C. Origin Reneges on Settlement Agreement. ................................. 7

D. Litigation is Removed from the Appropriate Forum ................. 8

E. The Litigation and Other Orders on Appeal ............................ 10

Summary of Argument ............................................................................. 12

QP1: Forum ..................................................................... 12

QP 2: Texas UCC Damages ............................................ 13

QP 3 and 4: Business Disparagement Claim ............... 14

QP 5: Jury Trial Waiver .................................................. 15

QP 6: Existence of a Contract ....................................... 16

Argument .................................................................................................... 16

I.      Remand is required under Waters v. Browning-Ferris Industries, Inc. ............................ 17

A.    Origin relinquished its right to challenge SNLEE's first-mover advantage under Waters. .................................................. 18

B.    Every jurisdiction must be "appropriate," regardless of what parties state in a forum selection clause .......................... 22

C.    If words in a forum-selection clause must have meaning, then IMCO is inapposite. ........................................... 25

II.    Striking SNLEE's Jury Trial demand was clear error of law. ....................................................... 28

A.    SNLEE's Jury Demand was timely and preserved under rule 81(c). ................................................................ 28

B.    The contractual jury waiver did not apply to SNLEE ............. 29

III.    The district court erred in granting summary judgment that barred SNLEE's actual damages under the Texas UCC .................. 32

IV.    Genuine Issues of Material Fact Preclude Summary Judgment on SNLEE's Disparagement Claim ............................... 36

A.    Whether Origin's conduct caused ProPetro's termination is a genuine issue of material fact. ........................ 37

B.    The District Court made credibility determinations and decided facts amidst conflicting evidence. ................................ 39

C.    The district court misapplied the law of causation. ................. 41

D.    The District Court Erred in Granting Summary Judgment on Origin's Contract Claims. ...................................... 44

Conclusion ............................................................... 46

Certificate of Compliance ........................................... 49

TABLE OF AUTHORITIES

## Cases

*Adams v. Petrade, Int'l, Inc.*, 754 S.W.2d ................................................. 50

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................. 41, 43, 48

*Apache Corp. v. Global Santa Fe Drilling Co.*, 435 F. App'x 322
       (5th Cir. 2011) .......................................................................... 30

*Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566 (5th Cir.
       2003) ............................................................................... 41, 43

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812
       (Tex.1997) .................................................................................. 39

*Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d
       812 (Tex. 1997) ......................................................................... 39

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616 (Tex.
       App.—Fort Worth 2007, pet. denied) ........................................ 45

AZZ Inc. v. Morgan, 462 S.W.3d 284 (Tex. App.–Fort Worth
       2015) .......................................................................................... 40

*Bank of Am., N.A. v. JB Hanna, LLC*, 866 F.3d 929 (8th Cir.
       2017) .......................................................................................... 33

*Basic Capital Mgmt. v. Dynex Comm., Inc.*, 348 S.W.3d 894
       (Tex. 2011) ................................................................................. 48

*Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d
       636 (Tex. App.—Dallas 2015, no pet.) ...................................... 50

*City of Rose City v. Nutmeg Insurance Co.*, 931 F.2d 13 (5th
       Cir.1991) .................................................................................... 19

*DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160
       (Tex. App. 2012) ........................................................................ 39

*Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019) ............................................................. 45

*Davis v. Toyota Motor Credit*, No. CIV.A. H-12-0287, 2014 WL 1653230 (S.D. Tex. Apr. 24, 2014) ................................. 38

*Duradril, LLC v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147 (Tex. App.— ......................................................... 50

*Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914 (5th Cir. 2022) ..................................... 20, 21

*El Paso Marketing, L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138 (Tex. 2012) .................................................. 39

*Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007) .................................................... 17

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) .................................... 23

*Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, et. al., 847 F.3d 255 (5th Cir. 2017) .............................. 17

*Gulf Coast Pharms. Plus, LLC v. RFT Consulting, Inc.*, No. 1:24CV80-LG-RPM, 2024 WL 3862045 (S.D. Miss. Aug. 19, 2024) .................................................. 25, 26, 30

*Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160 (Tex.1992) .................... 39

*Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir. 1975) .................... 31

*Houston N. Hosp. Props. v. Telco Leasing, Inc.*, 688 F.2d 408 (5th Cir. 1982) .............................................. 31

*Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W. 2d 762 (Tex.1987) ............... 45

*In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314 (Tex. 2006) .................. 35

*In re Prudential Ins. Co. of Am.* 148 S.W.3d 124 (Tex. 2004). ................ 34

*In re Weekley Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005) ......................... 49

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ................................................................. 24

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991) ................................................................. 42, 44, 45

*Jacob v. City of New York*, 315 U.S. 752 (1942)........................................ 32

*Midwest Compressor Systems LLC v. Highland Imperial, Inc.*, No. 05-19-01115-CV, 2021 WL 2548712 (Tex. App.— Dallas June 22, 2021, pet. denied)..................................... 50

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206 (5th Cir. 2023)................................................................. 24

*Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535 (5th Cir. 2023) ......................... 30

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........... 47

*Steinberg v. Cinema 'N' Drafthouse Sys., Inc.*, No. CIV.A. CA3-91-1044-R, 1997 WL 160183 (N.D. Tex. Apr. 1, 1997) ................ 37

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007)................................................................. 46

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409 (5th Cir. 2014) ................................................................. 30

*United States v. Garcia-Gonzalez*, 714 F.3d 306 (5th Cir. 2013) ............. 36

*United States v. Hall*, 134 F.4th 782 (5th Cir. 2025)................................. 36

*Waters v. Browning-Ferris Indus.*, 252 F.3d 796 (5th Cir. 2001) ...passim

*WDMG, L.C.C. v. Sirius Satellite Radio, Inc.*, No. CIV.A. 3:08-CV-1195, 2008 WL 4998783 (N.D. Tex. Nov. 21, 2008). 28, 29, 30

*WDMG, L.L.C. v. Sirius Satellite Radio, Inc.*, 2008 WL 4998783
　　(N.D. Tex. 2008) ............................................................. 12

*Whitaker v. Vista Staffing Sols., Inc.*, No. CV H-17-0876, 2017
　　WL 2983040 (S.D. Tex. July 11, 2017) .................................. passim

**Statutes**

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1332 ................................................................... 1, 23

28 U.S.C. § 1441 ........................................................................ 1

**Other Authorities**

Fed R. App. P. 32(a)(7)(B)(iii) ................................................. 49

Fed. R. App. P. 32(a)(5) ........................................................... 49

Fed. R. App. P. 32(a)(6) ........................................................... 49

Fed. R. App. P. 32(a)(7)(B) ..................................................... 49

FED. R. CIV. P. 56 ...................................................................... 14

FED. R. CIV. P. 56(a) ................................................................. 36

TEX. BUS. & COM. CODE § 1.305(a) ..................................... 33, 34

TEX. BUS. & COM. CODE § 9.507 ............................................ 34

Tex. Bus. & Com. Code § 9.625 .......................................... 10, 32

Tex. Bus. & Com. Code §§ 1.304 ......................................... 8, 32

Tex. Bus. & Com. Code §§ 9.607(c) ......................................... 32

Tex. Bus. & Comm. Code § 1.106(a) ........................................ 34

TEX. BUS. & COMM. CODE § 9.625 ........................................... 34

Tex. Bus. & Comm. Code § 9.625(b) ........................................................ 33

Tex. Gov.'t code § 26.042 ...................................................................... 23

Tex. Gov't Code § 26.043 ...................................................................... 23

Tex. Gov't Code § 27.031(a) .................................................................. 23

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................................................ 1

Fed. R. Civ. P. 81(c) ........................................................................... 2, 11

Fed. R. Civ. P. 81(c)(3)(A) ...................................................................... 28

## JURISDICTIONAL STATEMENT

The district court possessed subject-matter jurisdiction only if Origin did not contractually waive its statutory removal rights. 28 U.S.C. § 1332; 28 U.S.C. § 1441. The district court denied SNLEE's remand motion on October 25, 2022. This Court has appellate jurisdiction to review the final order refusing remand. Resolution of the contractual-waiver question determines federal jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A).

The district court entered a final stipulation of judgment on February 3, 2025. This Court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the Security Agreement's forum-selection clause —authorizing suit "in a court of appropriate jurisdiction in Dallas County, Texas" and "expressly waived" all "objections to venue and personal jurisdiction in such forum"—gave SNLEE a contractual right to select the Dallas State Court forum? *Yes*.

2.      Did the lower court err in deciding the ability to recover "all losses" under Texas Business and Commerce Code § 9.625(b). excludes any actual, direct damages incurred by SNLEE? *Yes*.

3.      Does construing all weight, credibility, and inferences from the record in favor of the movant and disregarding recorded ProPetro statements evidencing ProPetro terminated its relationship with SNLEE because of Origin warrant reversal of the lower court's order granting summary judgment?  *Yes*.

4.      Did the trial court improperly impute Guarantors' jury trial waiver against SNLEE against the express language of the wavier and fail to correctly apply FED. R. CIV. P. 81(C)?  *Yes*.

5.      Was granting summary judgment on Origin's contract claims without resolving fact disputes or SNLEE's affirmative defenses reversible error? *Yes*.

2

## STATEMENT OF FACTS

This Statement summarizes background facts, the parties and their relationships, and the procedural events underlying the final judgment. More facts related to the specific legal questions presented in this appeal appear in the relevant argument sections.

### A. Parties and their Lending Transactions.

SNLEE Energy Equipment, LLC ("SNLEE" or "SNLEE") is a Texas-based company engaged in the oilfield equipment and services sector. [1] Origin Bancorp, Inc. d/b/a Origin Bank ("Origin") is a financial institution that, in December 2018, extended a $3 million revolving line of credit to SNLEE, secured by a security interest in SNLEE's accounts receivable and other collateral.[2]

The parties' relationship was governed by the Revolving Credit and Security Agreement (the "Security Agreement") and Denise Mudigere and Prashanth Mudigere also executed personal guaranties (the "Guaranty Agreement"), [3] but SNLEE is not a signatory to the Guaranty Agreement.

Between 2019 and 2021 the parties amended the Security Agreement no fewer than nine times.[4] Each time, Origin invoiced additional renewal fees and increased the interest rate, even as the

---

[1] ROA.6097.
[2] ROA.5323.
[3] ROA.5384.
[4] ROA.5396, 5404, 5411, 5416, 5424, 5431, 5435, 5439, 5440.

global COVID-19 downturn sharply curtailed oil-field activity. [5] Despite these headwinds SNLEE continued to service the debt and remained current on principal and interest into early 2021. When the facility matured on March 4, 2021, the outstanding balance was approximately $1.92 million—fully collateralized by SNLEE's $2.4–$2.7 million in A/R.[6]

During the COVID-19 pandemic, Origin informed SNLEE that it no longer wished to be involved in SNLEE's oil and gas business sector and requested that SNLEE find a replacement lender. SNLEE, through its agent, sought alternative financing, ultimately negotiating with Amerisource Funding, Inc. ("Amerisource") to replace Origin as its accounts receivable lender.

### B. Origin's August 2021 Collection Blitz

Although Amerisource was prepared to fund by August 2021, it required payoff figures, lien releases, and routine field-examination access from Origin before closing. Origin's officers received the Amerisource contact information on July 30, 2021 and promised to cooperate. [7] Before the Amerisource transaction could close, Origin reversed course.

---

[5] ROA.5396, 5404, 5411, 5416, 5424, 5431, 5435, 5439, 5440.
[6] ROA.6388-6389.
[7] ROA.6371.

Notwithstanding its agreement to cooperate, Origin issued mass "Notice of Assignment" letters dated August 5, 2021 to all sixty-four of SNLEE's customers, including ProPetro (the "**Notice Letters**").[8] Origin also filed a lawsuit against SNLEE.[9] The letters (i) demanded that all present and future payments be remitted directly to Origin, (ii) threatened customers that any payment made to SNLEE "will not reduce, satisfy, or discharge" the invoices, and (iii) provided no accounting of the actual balance due.[10]   Origin sent the letters without alerting SNLEE, without disclosing SNLEE's imminent refinance, and without any prior demonstration that the collateral was insecure.[11]

Origin's senior lender contemporaneously acknowledged, internally, that SNLEE "is simply switching banks" and that the receivables exceeded the loan balance.[12] Yet Origin chose to blanket an entire customer base—during COVID supply-chain disruptions—with a message designed to chill ongoing remittances to SNLEE.

ProPetro's procurement and operations teams received Origin's Notice Letter on August 6.[13]  Over the next forty-eight hours Origin engaged ProPetro's Sr. Supply-Chain Director, Tanner Foster,

---

[8] ROA.6110.
[9] ROA.5151.
[10] ROA.5450.
[11] ROA.6110.
[12] ROA.6422.
[13] ROA.5474-5475.

by e-mail and telephone. SNLEE obtained audio recordings of ProPetro's internal August 2021 meeting (the "**ProPetro Recordings**"), during which Foster reported:

> Origin's lawyer "said [SNLEE] had defaulted on their loan, which is ... a huge deal."[14]

> "[They] probably can't pay their employees [or] subcontractors. That becomes an issue because if they're not paying the subcontractors, the subcontractors can just go to the next person in line, which would be us."[15]

> "We need to distance ourselves—run—from SNLEE."[16]

> "Multiple ProPetro witnesses confirmed that Foster's comments reflected what Origin communicated."[17]

Within days ProPetro accelerated an internal initiative to replace its third-party pump-packing vendors with in-house resources. ProPetro terminated two SNLEE field crews, directed operations to cease new engagements. But instead of capturing the work in-house, it began qualifying "One Point Services" as SNLEE's substitute.[18] These contemporaneous documents contradict the

---

[14] ROA.6400, 6460.
[15] ROA.6402, 6461.
[16] ROA.6402-6403, 6462.
[17] ROA.6097.
[18] ROA.6113-6114.

District Court's finding that ProPetro's phase-out began in May 2021 and was unrelated to Origin's conduct.

By the close of Q1 2022 SNLEE's ProPetro revenue fell to zero. Based on historical volumes and ProPetro's continuing need—evidenced by its hiring of One Point—SNLEE's damages expert projected the direct damages to SNLEE at $6.8 million through 2025.[19]

### C. Origin Reneges on Settlement Agreement.

On August 16, 2021 senior executives of SNLEE and Origin convened at Origin's Dallas headquarters to resolve the first lawsuit Origin had filed ten days earlier. Present were Origin Executive Vice-President Warrie Birdwell, Origin's counsel, the Mudigeres, and SNLEE's counsel.

**Origin offered**: (i) acceptance of $1.6 million from Amerisource at closing, (ii) a $825,000 personal note to be executed by the Mudigeres (with $450,000 immediately credited against the Loan), and (iii) waiver of accrued penalty interest and late charges.[20]

**SNLEE accepted** that structure on the spot, conditioned on complete discharge and dismissal with prejudice of Origin's lawsuit.[21]

---

[19] ROA.6224.
[20] ROA.6116.
[21] ROA.6376, 6391, 6410, 6413, 6422.

Over the next three weeks the parties performed: Amerisource wired $1.6 million; the Mudigeres executed the personal note; Origin recorded lien releases; and Origin voluntarily dismissed its lawsuit on September 13, 2021. [22] Origin's Rule 41 notice of voluntary dismissal came without prejudice but Origin represented to SNLEE and Amerisource that the Loan was "paid in full."[23] Origin's ledger then showed a **$0.00** loan balance as of December 31, 2021.[24]

Five months later, on February 22, 2022, SNLEE filed the present action asserting violations of the Texas UCC and business disparagement. Origin countered by resurrecting its contract claims, now contending that the August 2021 transaction was merely a "partial payment," that amounts remained due, and that the Guarantors were liable.[25]

### D. Litigation is Removed from the Appropriate Forum.

On February 22, 2022, SNLEE filed suit in the 134th Judicial District Court of Dallas County, Texas, asserting claims for breach of the Texas UCC and business disparagement. [26] SNLEE's Original Petition included a jury demand and paid the requisite jury fee. SNLEE alleges that Origin's conduct was commercially

---

[22] ROA.6116.
[23] ROA.6376, 6391, 6410, 6413, 6422.
[24] ROA.6489.
[25] ROA.521.
[26] Tex. Bus. & Com. Code §§ 1.304, 9.607.

unreasonable, in bad faith, and in violation of the Texas Business and Commerce Code (UCC), and that Origin's actions directly caused SNLEE to lose its largest customer and suffer substantial damages.

Origin removed to the Northern District of Texas and SNLEE moved to remand, invoking the forum-selection clause as a contractual waiver of Origin's removal right.[27] The forum-selection clause states in relevant part:

Any suits, claims, or causes of action arising from this Agreement may be **brought in** a court of **appropriate jurisdiction in Dallas County**, Texas and **Objections** to **venue** and personal jurisdiction in such forum are hereby **expressly waived.** [28]

SNLEE's motion, relying chiefly on this Court's decision in *Waters v. Browning-Ferris Industries, Inc.*, argued that the clause (1) granted each party the right to sue "in" Dallas County and (2) expressly waived any venue objection, thereby supplying first-mover's advantage to select the forum within Dallas, County.

The lower court denied remand finding the forum-selection clause "did not waive its objections to jurisdiction in full," departing from several decisions of its sister courts. SNLEE brings this appeal seeking remand to the 134th District Court for Dallas County. If remanded, all other orders and issues on appeal are moot and void.

---

[27] ROA.153.
[28] ROA.116.

9

### E. The Litigation and Other Orders on Appeal

SNLEE filed its First Amended Complaint; Origin answered and asserted counterclaims for breach of the Note and Guaranty, unjust enrichment, quantum meruit, and declaratory relief.[29]

Origin moved for partial summary judgment.[30] SNLEE responded with a 70-page evidentiary appendix detailing the ProPetro Recordings, Origin's payoff ledger, and Origin's waiver emails.[31]

On March 19, 2024 The District Court issued its Memorandum Opinion and Order[32] (the "**Order**") granting Origin's motion and dismissing all of SNLEE's claims and affirmative defenses. The Court dispatched the claims as follows:

**Business Disparagement** — The court held SNLEE failed to create a fact issue on "cause-in-fact," concluding reasonable minds could not differ that ProPetro decided in May 2021 to phase out SNLEE for independent reasons.[33]

**UCC Claims** — The court ruled lost-profit damages are categorically unavailable under Tex. Bus. & Com. Code § 9.625,

---

[29] ROA.198, 501.
[30] ROA.1604.
[31] ROA.4286.
[32] ROA.2589.
[33] ROA.2589.

deeming SNLEE's damages "special" and dismissing the UCC counts.[34]

**Origin's Contract Counterclaims** — The court granted summary judgment that SNLEE remains liable for the alleged residual loan balance, rejecting SNLEE's settlement and modification defenses under Rule 11 and the statute of frauds.[35]

**Jury Demand** – while its motion for partial summary judgment was pending, Origin filed a late "motion" seeking to strike SNLEE's jury demand under pursuant to the Guaranty Agreement, which is supposed to be enforced by SNLEE, not against it. The district court granted Origin's motion. The court found that Salt and Light had waived its right to a jury trial by virtue of the jury waiver provision in the Guaranty Agreement, even though Salt and Light (the borrower) was not a signatory to the Guaranty. The court further held that Salt and Light's failure to renew its jury demand after removal constituted a waiver, despite the express language of Federal Rule of Civil Procedure 81(c).

The district court entered a final stipulated judgment on February 3, 2025 incorporating its prior orders. SNLEE timely filed its notice of appeal on April 10, 2024 seeking review of all the above-described rulings.

---

[34] ROA.2600-2604.
[35] ROA.2604-2610.

SUMMARY OF ARGUMENT

**QP1: Forum**

A party waives removal when a contract **(i)** allows the plaintiff to sue in a chosen state forum and **(ii)** the defendant has "consented to jurisdiction" and "waived any objection to venue."[36]  The Security Agreement mirrors that language precisely:

> **ANY SUITS, CLAIMS, OR CAUSES OF ACTION ARISING DIRECTLY OR INDIRECTLY FROM THIS AGREEMENT, THE NOTE, THE OTHER LOAN DOCUMENTS, OR ANY OTHER AGREEMENTS OR INSTRUMENTS BETWEEN BANK AND BORROWER RELATING TO SUCH DOCUMENTS MAY BE BROUGHT IN A COURT OF APPROPRIATE JURISDICTION IN DALLAS COUNTY, TEXAS AND OBJECTIONS TO VENUE AND PERSONAL JURISDICTION IN SUCH FORUM ARE HEREBY EXPRESSLY WAIVED.[37]**

The district court reached the opposite result only by misreading both the above clause and this Circuit's precedents regarding the same. The trial court converted the express consent provision into implied reservation of objections importing strained reasoning from another decision interpreting a forum selection clause dissimilar from the one here.

---

[36] *Waters*, 252 F.3d at 798; *Whitaker*, 2017 WL 2983040, at \*2–3; *WDMG, L.L.C. v. Sirius Satellite Radio, Inc.*, 2008 WL 4998783, at \*2 (N.D. Tex. 2008).
[37] ROA.116.

By flipping these rules and cases, the district court impermissibly placed the burden on SNLEE, eviscerated its first-mover advantage recognized in *Waters* and applied by the district courts addressing forum selection clauses containing the same attributes as the Security Agreement here.

A party to a contract may waive a right of removal provided the provision of the contract makes clear that the other party to the contract has the right to choose the forum in which any dispute will be heard. Because the forum-selection clause unambiguously waives Origin's removal right, this Court should reverse and remand this case to the 134th Judicial District Court, Dallas County, Texas.

### QP 2: Texas UCC Damages

The Texas Business and Commerce Code provisions governing SNLEE's UCC claims. The UCC expressly authorizes SNLEE to pursue damages for "*any loss*" caused by Origin's failure to abide by Chapter 9 of the UCC. "Any loss" includes direct damages under the statute. The lower court relied on outdated caselaw, interpreting a prior version of the UCC when it ruled SNLEE's lost profits could not be recovered. Whether treated as direct or consequential damages, they are permitted under Chapter 9 of the UCC. This Court should reverse this novel and erroneous interpretation of the Texas UCC.

**QP 3 and 4: Business Disparagement Claim**

The district court's grant of summary judgment in favor of Origin Bank ("Origin") cannot stand. When the summary-judgment record is viewed—as Rule 56 requires—in the light most favorable to SNLEE, a reasonable jury could readily find that Origin's false and disparaging statements were a substantial factor in ProPetro Services, Inc.'s termination of its lucrative, multi-line business relationship with SNLEE.

SNLEE had set forth competent evidence, including voice recordings and other written correspondence, that Origin's conduct was the sole cause of ProPetro's election to begin using a new vendor instead of SNLEE. That evidence, along with the close temporal proximity between Origin's conduct and ProPetro's reaction, demonstrates the causation element of a business disparagement claim and at a minimum raises a fact issue as to whether it was a substantial factor in ProPetro's decision.

The district court reached the opposite conclusion only by ignoring the most probative evidence, crediting testimony tainted by self-interest and prior perjury, and drawing every conceivable inference in Origin's favor. When properly applied, both FEDERAL RULE OF CIVIL PROCEDURE 56 and governing Fifth Circuit precedent compel reversal.

**QP 5: Jury Trial Waiver**

The lower court deprived SNLEE of its rights under the Seventh Amendment to the United States Constitution without legal justification.

SNLEE is not a signatory to any contract containing a waiver of the right to trial by jury. The district court imputed the Guaranty Agreement's jury waiver onto SNLEE by ruling that Texas law required all simultaneously executed Loan Documents to be read together. Whether read together, separate, backwards, or forward, the plain language of the Guarantor's waiver of jury trial does not show SNLEE (as Borrower) waived anything:

> 22. **Waiver of Jury Trial.** GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE SECURITY AGREEMENT, AND/OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BORROWER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR

The district court's analysis of Texas law construing contracts together got it wrong. The Texas Supreme Court decision that enforced a jury waiver against a non-signatory flowed the opposite direction. The guarantor, assuming the shoes of the primary obligor

under the prime contract, was said to have waived its right to jury trial based on the prime contract, not the other way around.

The claims and issues on remand should be decided by a jury.

**QP 6: Existence of a Contract**

The district court erred in ruling that no contract of settlement or loan modification was made between the parties in August 2021.

Genuine issues of material fact abound related to (1) the negotiated settlement agreement, (2) the payoff amount, and (3) SNLEE's affirmative defenses.  The expansive and specific actions of performance carried out in furtherance of the contract, at the very minimum, require resolution by jury before the contract could be declared void under the statute of frauds.

SNLEE's affirmative defenses are each independently valid and supported by competent evidence.  For these reasons, and those that follow, trial on the merits is necessary.

ARGUMENT

Whether a contract waives the right of removal is a question of law reviewed de novo.[38]  Origin, as removing party, must show the

---

[38] *Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, et. al., 847 F.3d 255, 257-58 (5th Cir. 2017).

waiver standard is not met, and any doubts are resolved in favor of remand.[39]

## I. Remand is required under Waters v. Browning-Ferris Industries, Inc.

The forum-selection clause at issue is materially indistinguishable from the clause this Court enforced in *Waters v. Browning-Ferris Industries, Inc.* and that Chief Judge Rosenthal of the Southern District of Texas enforced in *Whitaker v. Vista Staffing Solutions, Inc.*[40] Under binding precedent from this Court, nothing more is required to entitle SNLEE to remand to state court.

By granting SNLEE the first-mover's right to choose the appropriate forum within Dallas County, the forum selection clause precludes Origin from unilaterally changing that forum through removal. The lower court's Order Denying Remand broke from other district courts applying *Waters* creating a potential split within the Northern District of Texas' decisions, and from other districts within this Court's jurisdiction.[41]

That potential split is resolved by this Court enforcing its prior-holdings that an agreement that lawsuits "may be *brought in* a court

---

[39] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[40] *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001); *Whitaker v. Vista Staffing Sols., Inc.*, No. CV H-17-0876, 2017 WL 2983040, at *2 (S.D. Tex. July 11, 2017).
[41] *See* ROA.412-413.

of *appropriate jurisdiction* in Dallas County, Texas" is consent to jurisdiction in such forum.

### A. Origin relinquished its right to challenge SNLEE's first-mover advantage under Waters.

"A party to a contract may waive a right of removal provided the provision of the contract makes clear that the other party to the contract has the "right to choose the forum" in which any dispute will be heard.[42]

The parties here agreed suits "may be brought in a court of appropriate jurisdiction in Dallas County, Texas." [43] The clause continues: "objections to venue and personal jurisdiction in such forum are hereby expressly waived."[44] By consenting to *a* court in Dallas County, Texas having appropriate jurisdiction, the clause reflects mutual consent to either a state court or a federal court of Dallas County —the first requirement recognized in *Waters*.[45] The clause satisfies *Waters* second prong because Origin "expressly waived" all objections to venue *in that forum*.[46] When properly read,

---

[42] *Waters,* 252 F.3d at 797 (quoting C*ity of Rose City v. Nutmeg Insurance Co.*, 931 F.2d 13, 16 (5th Cir.1991), cert. denied, 502 U.S. 908, 112 (1991).
[43] ROA.116.
[44] ROA.116.
[45] 252 F.3d at 798 ("agreed that Waters may sue it in any court of Texas").
[46] *Whitaker*, 2017 WL 2983040, at *2 (S.D. Tex. July 11, 2017)("The Fifth Circuit held that the "consent[ ] to jurisdiction" and waiver of "any objection" to venue, taken together, created a clear and unequivocal waiver of removal rights if the plaintiff chose to file suit in state court.").

remand under the Security Agreement's forum-selection clause aligns with this Court's precedence interpreting similar language.

This Court recently held where forum selection clauses require lawsuits be "brought in" a particular jurisdiction, they have necessarily barred removal to federal court. [47] *Dynamic CRM Recruiting Solutions*, *L.L.C.* considered what "brought in" meant using the familiar standards of contract interpretation in deciding whether removal was barred under the agreement.[48] This Court upheld Chief Judge Rosenthal's order for remand to state court, agreeing that the commonly understood meaning of "brought in" a particular jurisdiction is more than "commenced" or "started" in the agreed jurisdiction; instead it implies the lawsuit remains in the stipulated jurisdiction.[49]

The Court's reasoning made practical sense, when parties write down a forum selection clause "...using terminology similar to that which courts have generally construed as forbidding removal, they were waiving their right to remove an action filed in [state] district

---

[47] *Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 923 (5th Cir. 2022).

[48] *Dynamic CRM Recruiting Sols., L.L.C.*, 31 F.4th at 917 (any lawsuit "…shall be brought before the district courts of Harris County Texas, situated in the city of Houston, unless mutually agreed otherwise. Notwithstanding this, this choice of forum provision shall not prevent either party from seeking injunctive relief with respect to a violation of intellectual property rights or confidentiality obligations in any appropriate jurisdiction.").

[49] *Dynamic CRM Recruiting Sols., L.L.C.*, 31 F.4th at 923.

court to federal court."[50] Though the Security Agreement's forum-selection is not mandatory like *Dynamic*, the meaning of "brought in" is not changed.

Particularly when consent and waiver of venue objections under the Security Agreement triggers the same first-mover advantage identified in *Waters* and later applied in *Whitaker*. The *Whitaker* court addressed an effectively identical forum selection clause. Comparing the relevant provisions from *Whitaker* to the Security Agreement:

| *Whitaker*[51] | Security Agreement[52] |
|---|---|
| Each party submits to the jurisdiction of any state or federal court sitting in Houston, Texas in any action | Any suits, claims or causes of action **may be brought** in a court of appropriate jurisdiction **in Dallas County, Texas** |

---

[50] *Dynamic CRM Recruiting Sols., L.L.C.*, <mark>31 F.4th at 923</mark>.
[51] *Whitaker v. Vista Staffing Sols., Inc.*, No. CV H-17-0876, <mark>2017 WL 2983040</mark>, at *3 (S.D. Tex. July 11, 2017) (cleaned up).
[52] <mark>ROA.116</mark>. (cleaned up).

| or proceeding arising out of or relating to this Agreement | |
|---|---|
| Waives any claim of inconvenient forum or other challenge to venue in such court. | And objections to venue and personal jurisdiction in such forum are hereby expressly waived. |
| Agrees that all claims in respect of such action or proceeding may be heard and determined in any such court. | Any suits, claims or causes of action…*may be brought in a court of appropriate jurisdiction* in Dallas County, Texas. |

The *Whitaker* Court found that the forum clause amounted to an agreement that "the party initiating the litigation could choose whether to proceed in state court or federal court, as long as it was in Harris County, Texas."[53] No different result should be reached here.

Because SNLEE filed first in the 134th District Court for Dallas County, Origin's waiver precludes its removal.  Origin mutually obtained the benefit of freely choosing Dallas County as a litigation forum; it relinquished the right to alter SNLEE's choice of "a" court for its claims to be "brought in" within that county.

The district court reached the opposite conclusion of its sister courts by misreading "appropriate jurisdiction" as negating consent; not granting it, and by treating removal within Dallas County as inconsequential, despite *Waters's* emphasis on honoring the plaintiff's

---

[53] *Whitaker*, 2017 WL 2983040, at *2-3 (S.D. Tex. July 11, 2017).

chosen forum, not merely county.[54] The lower court's denial of remand converted the express consent to jurisdiction on claims "brought in a court of appropriate jurisdiction" in "Dallas County" to create an escape clause pitting the former "brought in a court" clause against "appropriate jurisdiction" for control over the sentence.

However, a court must try to harmonize its provisions and give each word meaning.[55] Here, the clause's terms are in harmony, and none are rendered meaningless if consent to a Dallas County forum of "appropriate jurisdiction" is just that, consent.

### B. Every jurisdiction must be "appropriate," regardless of what parties state in a forum selection clause.

The district court concluded Origin "did not waive its objections to jurisdiction in full" because suit must be filed in a "court of appropriate jurisdiction." That phrase merely acknowledges subject-matter jurisdiction must exist; it does not preserve any

---

[54] *Waters*, 252 F.3d, at 798 ("this court affirms…this clause [allows] plaintiff has the right *to choose the forum* in which to bring his suit against the defendant."). (emphasis added).
[55] *See, e.g.*, *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.").

objection Origin and SNLEE already contracted away, nor could even waive in the first place.[56]

There are numerous state and local courts within Dallas County, Texas including justice of the peace courts, business courts, county courts at law, probate courts, and county district courts, to name some. Not all would have jurisdiction over a contract dispute involving the Security Agreement, with an unknown amount in controversy in some future lawsuit.[57] Thus not all courts are "a court of…Dallas County, Texas" with "appropriate jurisdiction" over disputes arising from the Security Agreement, no matter what the Parties consent to in a contract.

The district court's misreading reached the opposite conclusion and negated Origin's express consent by treating removal within Dallas County as inconsequential; despite *Waters's* emphasis on honoring the chosen court, not merely county.

The recent Southern District of Mississippi decision in *Gulf Coast Pharmaceuticals* addressed this very same issue. There, as here,

---

[56] The Order does not identify the "objections to jurisdiction" purportedly left available to Origin. However, "Parties may not waive the issue of subject matter jurisdiction" *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 213 (5th Cir. 2023)(citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[57] *See* Tex. Gov't Code § 27.031(a)(maximum amount in controversy $20,000); Tex. Gov't Code § 26.043 (removing county court jurisdiction over eight classes of lawsuits); Tex. Gov.'t code § 26.042 (setting minimum and maximum amounts in controversy for constitutional county courts); 28 U.S.C. § 1332 (requiring complete diversity and amount in controversy of $75,000).

the clause permitted suits "in Harrison County, Mississippi" and waived "any objection as to venue."  The district court granted remand, emphasizing the contractual right in the plaintiff to select state or federal court without the "court [acting to] relieve [defendant] of its contractual waiver of jurisdiction and venue in [state court]."[58]

The forum selection clause in *Gulf Coast* gives mutual consent to venue being proper in Harrison County, Mississippi, followed by waiver of objections to the venue and personal jurisdiction, the same as Security Agreement does for Courts in Dallas County Texas.

| *Gulf Coast*[59] | Security Agreement[60] |
|---|---|
| Venue shall only be proper in Harrison County, Mississippi. | Any suits, claims or causes of action **may be brought** in a court of appropriate jurisdiction **in Dallas County, Texas.** |
| The parties consent to personal jurisdiction and venue solely within these forums and waive all possible objections thereto. | Objections to venue and personal jurisdiction in such forum are hereby expressly waived. |

---

[58] *Gulf Coast Pharms. Plus, LLC v. RFT Consulting, Inc.*, No. 1:24CV80-LG-RPM, 2024 WL 3862045, at *3 (S.D. Miss. Aug. 19, 2024), *appeal docketed*, No. 24-60480 (5th Cir. Sep. 19, 2024) (quoting *Waters*, at 798.).

[59] *Gulf Coast Pharms. Plus, LLC*, 2024 WL 3862045, at *2 (S.D. Miss. Aug. 19, 2024)

[60] ROA.116 (cleaned up).

Whether venue is in the form of permissive consent, or exclusive, is immaterial to whether the parties consented to jurisdiction to any forum within that County. Consent and waiver, according to *Waters, Whitaker, Gulf Coast*'s reasoning, constitute a first-mover's advantage barring removal to federal courts.

Holding that forfeit of any venue and personal jurisdiction objections foreclose removal from a state court of consent jurisdiction harmonizes the terms of these permissive forum selection clauses and enforces the bargained for choice of forum. To interpret otherwise would render the waiver of objection to venue meaningless.

## C. If words in a forum-selection clause must have meaning, then IMCO is inapposite.

Despite the lower court's acknowledgement that *IMCO Recycling, Inc. v. Warchauer* involved a denial of "remand when the agreement waived objections to only personal jurisdiction" it still thrust its reasoning into this case. [61] Although the lower court relied on it to deny remand, *IMCO's* discussion about a confusing forum-selection clause actually shows why remand is required here. Origin waived both personal-jurisdiction *and venue* objections.[62] *IMCO* itself recognized *Waters'* decisive venue waiver language—present in

---

[61] ROA.413-414.
[62] *See* ROA.116.

*Waters*, *Whitaker*, and here but absent there. [63]  By equating the contract considered in *IMCO* with the Security Agreement, the district court overlooked this distinction.

The district court also deemed SNLEE's clause "permissive," ignoring that *Waters* enforced permissive language.  What matters is not the mandatory designation of a single court but the combined consent/waiver formulation, that the Security Agreement satisfies.

The comparative analysis between *IMCO* and *Waters* in *WDMG, L.C.C. v. Sirius Satellite Radio, Inc.*, reached the opposite conclusion from the lower court's here.[64] There, the court remanded where the clause allowed suit "in Dallas County" and waived "any objection to venue or personal jurisdiction."  Again, the forum selection clause at issue in *WDMG* is nearly identical to the Security Agreement:

| *WDMG*[65] | Security Agreement[66] |
|---|---|
| Submits to the nonexclusive jurisdiction of the United States District Court for the Northern District of the State of Texas *and* the state courts of the State of Texas located in | Any suits, claims or causes of action…may be brought in a court of appropriate jurisdiction in Dallas County, Texas. |

---

[63] *Whitaker*, No. CV H-17-0876, 2017 WL 2983040, at *3 (S.D. Tex. July 11, 2017).
[64] No. CIV.A. 3:08-CV-1195, 2008 WL 4998783, at *2 (N.D. Tex. Nov. 21, 2008).
[65] *WDMG, L.C.C.*, No. CIV.A. 3:08-CV-1195, 2008 WL 4998783, at *1 (N.D. Tex. Nov. 21, 2008) (cleaned up).
[66] ROA.116 (cleaned up).

| | |
|---|---|
| Dallas County, Texas for the purposes of any suit. | |
| Waives any objection to the laying of venue of any action, suit or proceeding…in the United States District Court for the Northern District…or the state courts…located in Dallas County, Texas. | And objections to venue and personal jurisdiction in such forum are hereby expressly waived. |

Same as here, the removing party in *WDMG* relied on *IMCO* to argue that it had not waived its right to seek removal to federal court. Judge Lynn distinguished *IMCO* for the same reasons SNLEE urges here: the waiver of venue is dispositive. The clause in *IMCO* "waived only objections to personal jurisdiction, whereas the [parties] here submitted to jurisdiction without the same limitation."[67]

Because the relevant contract in *IMCO* is fatally dissimilar from the forum this one, as well as the clauses in *Waters*, *WDMG*, *Gulf Coast*, *and Whitaker*, the district court's analogy and reliance on the *IMCO* confused the first-mover advantage *Waters* recognized and led to error and potential split with its sister courts. The misreading of the Security Agreement and this Court's precedents was in error. This Court should reverse and remand this proceeding to the State of Texas 134th District Court for Dallas County.

---

[67] *WDMG, L.C.C.*, No. CIV.A. 3:08-CV-1195, 2008 WL 4998783, at *2 (N.D. Tex. Nov. 21, 2008).

## II.     Striking SNLEE's Jury Trial demand was clear error of law.

The trial on remand should be decided by a jury. "Generally, whether a party is entitled to a jury trial is a legal question [this Court] review[s] de novo."[68] The lower court struck SNLEE's jury demand by misconstruing the Parties' agreements to impugn the Guarantors jury waiver onto SNLEE.

### A. SNLEE's Jury Demand was timely and preserved under rule 81(c).

SNLEE demanded a jury trial in its Original Petition filed in state court and paid the jury fee. Under Federal Rule of Civil Procedure 81(c)(3)(A):

> "A party who, before removal, expressly demanded a jury trial in accordance with state law need not renew the demand after removal."

The Fifth Circuit and other courts have consistently held that a jury demand made in state court is automatically preserved upon removal and need not be renewed.[69]

---

[68] *Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535, 541 n.2 (5th Cir. 2023) (citing *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 416 (5th Cir. 2014); *Apache Corp. v. Global Santa Fe Drilling Co.*, 435 F. App'x 322, 324 (5th Cir. 2011) (per curiam)).

[69] *See Houston N. Hosp. Props. v. Telco Leasing, Inc.*, 688 F.2d 408, 409-10 (5th Cir. 1982); *Higgins v. Boeing Co.*, 526 F.2d 1004, 1006 (2d Cir. 1975).

The district court's conclusion that SNLEE waived its jury demand by failing to renew it after removal is contrary to the plain language of Rule 81(c) and controlling precedent. The district court committed clear error in failing to apply Rule 81(c).[70]

Regardless of the Federal Rules of Civil Procedure, SNLEE has a right to a jury trial protected by the Seventh Amendment to the United States Constitution. The right to a jury trial in civil cases is a fundamental right protected by the Seventh Amendment. [71] The district court's order deprived SNLEE of this right without legal justification.

Accordingly, the Order striking SNLEE's Jury Demand should be reversed.

## B. The contractual jury waiver did not apply to SNLEE

The district court ruled that SNLEE waived its right to a jury trial by virtue of a jury waiver provision in the Guaranty Agreement. SNLEE is not a signatory to the Guaranty Agreement. The Guaranty's jury waiver provision by its own terms applies only to the "Guarantors"—i.e., Denise and Shawn Mudigere—not to SNLEE as the borrower. The Security Agreement itself does not contain a jury waiver applicable to SNLEE.

---

[70] ROA.2614, 2743.
[71] *See Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942).

The jury waiver isn't even written to be enforced against SNLEE, it is written for SNLEE to enforce it:

SNLEE, the above referenced "borrower," is explicitly permited to

> 22.    **Waiver of Jury Trial.** GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE SECURITY AGREEMENT, AND/OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BORROWER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR

enforce the waiver against the Guarantors in any proceeding.[72] The language makes clear that only guarantors are waiving their jury trial right, stating in conclusion "this waiver by Guarantors" and not SNLEE.  The lower court's reasoning that an express waiver of a jury trial by Guarantors is implied to a borrower is nonsensical and fails to comport with the waiver's plain language.

The Eighth Circuit, in *Bank of Am., N.A. v. JB Hanna, LLC*, addressed an identical issue and held that a jury waiver in a guaranty did not waive the borrower's right to a jury trial.[73] The district court's contrary conclusion is unsupported by the text of the agreements and

---

[72] ROA.2325.
[73] 866 F.3d 929, 934 (8th Cir. 2017).

is inconsistent with the principle that jury waivers must be strictly construed and not implied.[74]

The court's reliance on Texas cases construing contemporaneous agreements together did not support the district court's ruling.[75] The Court quotes language from the Guaranty Agreement's jury waiver provision about the "borrower" enforcing the Guarantors' waiver, but fails to articulate where, or what language, shows SNLEE's express consent to waive its own jury trial right.

The facts of *In re Prudential Ins. Co. of Am.* cited in the district court's order illustrates why SNLEE did not waive its right to a jury here.[76] There, the agreements being construed together were in reverse posture, the primary contract contained a general jury waiver provision which was offered against the guarantor, whose guaranty contract had no express waiver.[77] However, in that case, the guarantor stepped into the shoes of the primary obligor under the primary contract by way of its guaranty.[78] Here, those roles are completely flipped. SNLEE is not in the shoes of Guarantors and the primary contracts contain no such waiver of SNLEE's right to a jury

---

[74] *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 132 (Tex. 2004).
[75] *See* ROA.2615.
[76] 148 S.W.3d 124 (Tex. 2004).
[77] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 130-33.
[78] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 130-33.

trial. The lower court's novel reverse incorporation of the contracts in this case is not an application of Texas law, it is an expansion of it. The fundamental right to a jury trial is being callously disregarded by the trial court's finding of implied waiver that is contrary to the express text signed by the parties.

Even if the jury waiver could be construed to apply to SNLEE (which it cannot), Origin waived any right to enforce it by litigating the case as a jury trial for over two years, participating in scheduling orders and joint motions referencing a jury trial, and failing to timely move to strike the jury demand.[79]

### III. The district court erred in granting summary judgment that barred SNLEE's actual damages under the Texas UCC.

SNLEE sued Origin for failure to use commercially reasonable efforts to collect Plaintiff's accounts receivable in violation of Tex. Bus. & Com. Code §§ 9.607(c) & 1.304.[80] SNLEE sought damages for the loss of ProPetro's business under § 9.625(b).[81] The district court ruled that lost profits under § 9.625(b) are never recoverable.[82] The judgment below creates a judicial limitation that does not exist under

---

[79] *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (waiver of contractual jury waiver by conduct).

[80] ROA.1327.

[81] ROA.1327.

[82] The trial court ruled only on whether SNLEE could receive damages under § 9.625 and made no further ruling on SNLEE's claim under the Texas UCC.

Texas law. This court reviews a district court's statutory interpretation *de novo*.[83]

The relevant Texas UCC code states that a secured party "is liable for damages in the amount of ***any loss*** caused by a failure to comply with this chapter."[84] The accompanying official comment confirms the statute's "principal limitations" are the duties of good faith and commercial reasonableness—not categorical damage caps. Contrary to such caps, the commentary adds that "under subsection (b) the person ***may recover damages for losses*** caused by noncompliance" without exclusion.[85]

By reading "any loss" to exclude the recovery of lost profits, the court ignored the commentary and the directive that remedies "must be liberally administered" to place the aggrieved party "in as good a position as if the other party had fully performed."[86]

The district relied on a 1997 federal court decision interpreting an outdated version of § 9.625 to support its decision "that consequential damages are not allowed under [§] 9.625."[87] But even assuming SNLEE seeks consequential damages, that 1997 judgment

---

[83] U*nited States v. Hall*, 134 F.4th 782, 787 (5th Cir. 2025) (citing *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013)).
[84] TEX. BUS. & COMM. CODE § 9.625(b).
[85] TEX. BUS. & COMM. CODE § 9.625(b), cmt. 3.
[86] TEX. BUS. & COM. CODE § 1.305(a).
[87] ROA.2602 (citing *Steinberg v. Cinema 'N' Drafthouse Sys., Inc.*, No. CIV.A. CA3-91-1044-R, 1997 WL 160183, at *2 (N.D. Tex. Apr. 1, 1997)).

rested on § 1.305(a) (codified as § 1.106(a) back then), to conclude consequential damages were not encompassed under § 9.507 that was later updated, revised and recodified as § 9.625 after that ruling. This Court declined to reach the issue when raised on appeal.[88]

But § 1.305(a) does not answer what "any loss" means in this context. It states:

> The remedies provided by this title must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in this title or by other rule of law.[89]

Rejecting the "unduly narrow or technical interpretation of remedial provisions"[90] the Texas legislature explicitly states that SNLEE may recover "any loss" caused by Origin's noncompliance, and that includes actual damages. More recent decisions within this circuit have correctly found "any loss" includes the "actual damages" incurred by a plaintiff.

---

[88] c*ompare* Tex. Bus. & Com. Code § 9.507 (1967), *with* Tex. Bus. & Comm. Code § 9.625 (1999); *Steinberg*, 135 F.3d, at 140 ("The district court also dismissed the counterclaim on a second basis, that Cinema's damages on its counterclaim would not be recoverable because they are consequential and precluded by Tex. Bus. & Comm. Code § 1.106(a). We need not address this issue.").

[89] Tex. Bus. & Com. Code § 1.305(a).

[90] Tex. Bus. & Com. Code § 1.305(a), cmt. 1.

In 2014, the Southern District of Texas found that personal injury damages on a breach of the peace claim were recoverable under § 9.625 because "[t]he statute makes clear that actual damages may be recovered…"[91] At common law, the term "actual damages" encompasses both "direct" and "consequential" damages. [92] And SNLEE has properly pleaded a claim for actual damages, whether those damages are cast as direct or consequential, as permitted by the statute.

SNLEE has adduced substantial damages evidence below demonstrating that Origin's contacts were the sole, but-for, and substantial reason ProPetro terminated its business relationship with SNLEE.[93] Texas law defines "direct" damages as "the necessary and usual result of the defendant's wrongful act," which "flow naturally and necessarily from the wrong."[94] Direct damages are conclusively presumed to have been foreseen by the defendant from his wrongful act."[95]

---

[91] *Davis v. Toyota Motor Credit*, No. CIV.A. H-12-0287, 2014 WL 1653230, at *7 (S.D. Tex. Apr. 24, 2014) (finding actual damages available for breach of peace claim stemming from the repossession of a vehicle resulting in injury to debtor).

[92] *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 179 (Tex. App. 2012) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997); *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992) (Phillips, C.J., concurring)).

[93] *Infra* Part IV.

[94] *El Paso Marketing, L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012).

[95] *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

As is the case here, "[l]ost profits may be in the form of direct damages – that is profits lost on the contract itself – or in the form of consequential damages – such as profits lost on other contracts resulting from the breach."[96] But whether direct or consequential, SNLEE may recover lost profits so long as they are not "remote, contingent, speculative or conjectural."[97]

Because the statute cannot both expressly permit and categorically bar actual damages, the district court erred in granting summary judgment and barring SNLEE's claims for losses under the Texas UCC.  This is contrary to the plain language of the statute and Texas law on damages. This Court should reverse.

### IV.   Genuine Issues of Material Fact Preclude Summary Judgment on SNLEE's Disparagement Claim.

This Court reviews summary judgment rulings *de novo*.[98] Summary judgment may be granted only when the evidence shows "that there is no genuine dispute as to *any* material fact and the movant is entitled to judgment as a matter of law."[99] Genuine disputes of material fact exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[100]

---

[96] *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App.–Fort Worth 2015).
[97] *AZZ Inc*, 462 S.W.3d at 289.
[98] *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021).
[99] FED. R. CIV. P. 56(a) (emphasis added).
[100] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A]ll facts and inferences must be viewed in the light most favorable to the nonmoving party"[101]—here, SNLEE—and the Court must "resolve all factual disputes in [SNLEE']s favor."[102]

The district court erred in granting summary judgment on SNLEE's claim for business disparagement in favor of Origin because it failed to credit SNLEE's evidence and it drew inferences in favor of the movant contrary to the summary judgment standard.[103] Applying the proper standard under FED. R. CIV. P. 56, summary judgment was improper because SNLEE adduced substantial evidence that Origin's communications with ProPetro caused ProPetro to terminate SNLEE's contract.

### A. Whether Origin's conduct caused ProPetro's termination is a genuine issue of material fact.

The court below impermissibly ignored the contemporaneous audio recordings that constitute direct, smoking-gun evidence of causation. Minutes after Origin's counsel telephoned ProPetro's supply-chain director, Tanner Foster, ProPetro convened an internal meeting that was recorded.[104] During that meeting—speaking before any prospect of litigation, and therefore at a moment of unguarded

---

[101] *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003) (citations omitted).

[102] *Shah*, 985 F.3d at 453 (citations omitted).

[103] *See Anderson*, 477 U.S., at 255 (all reasonable inferences must be drawn in favor of the nonmovant).

[104] ROA.6451-6453.

candor—Foster relayed Origin's message that SNLEE had "defaulted … which is a huge deal" and warned his team that ProPetro "could be dragged into litigation."[105] Foster's immediate reaction was unequivocal:

> "*We need to distance ourselves—run—from Salt and Light.*"[106]

He then issued concrete directives to: 1) "accelerate" the removal of SNLEE's pump-packing crews from the field; and 2) "switch to a different pump-packing provider" altogether.[107]

Foster had undisputed, ultimate authority to retain or terminate vendors.[108]  These real-time, unfiltered statements are precisely the sort of direct evidence that a reasonable jury may conclude shows causation and should preclude summary judgment.[109]

The district court's order mentions the recordings only in passing, electing instead to credit post-litigation statements in which the very same ProPetro personnel tried to walk back their contemporaneous admissions.[110] That approach flips Rule 56 on its

---

[105] ROA.6451-6453.
[106] ROA.6402-6403, 6462.
[107] ROA.6405, 6464.
[108] ROA.6124.
[109] S*ee Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (reversing summary judgment where taped conversations revealed disputed motives).
[110] ROA.2592.

head.   When a sworn deposition, live audio, and a self-serving declaration collide, it is the jury's prerogative—not the judge's—to decide which to believe.[111]

## B. The District Court made credibility determinations and decided facts amidst conflicting evidence.

In briefing below, Origin argued, and the district court accepted, that ProPetro's decision to jettison SNLEE was merely the execution of a May 2021 internal "concept" to insource pump-packing services by early 2022, which would not have altered ProPetro's purchases of equipment and inventory from SNLEE.[112] But SNLEE submitted deposition testimony from ProPetro's operations manager, Francisco Dominguez, conceding that the plan didn't happen.[113] ProPetro's current pump-packing supervisor, confirmed that ProPetro still outsourced pump-packing and uses One Point Services even more than [it] ever used SNLEE.[114] Those admissions obliterate the insourcing narrative and, at the very least, raise a triable issue of fact as to ProPetro's true motivation.

Accepting Origin's version of events required the district court to: (1) ignore contradictory testimony from ProPetro's own witnesses; (2) presume that ProPetro inexplicably preferred a new vendor (One

---

[111] *See Anderson*, 477 U.S. at 255; *Armstrong v. Am. Home Shield Corp.*, 333 F.3d at 568.
[112] ROA.6273-6275.
[113] ROA.6113-6114.
[114] ROA.6113-6114.

Point)[115] merely to advance the supposedly long-term, cost-saving insourcing plan; and (3) assume, without evidence, that the abrupt replacement of SNLEE's crews was coincidental to Origin's defamatory accusations made hours earlier.  Each of those leaps constitutes an impermissible fact-finding exercise warranting reversal from this Court.

Assuming ProPetro contemplated insourcing pump-packing months earlier, Origin remains liable if its statements "hastened" or "accelerated" the termination.  A defendant cannot escape liability merely because the third party might at some undefined point have ended the relationship anyway.[116] Even if the law did permit escape on that type of speculation, summary judgment would still have been improper. The factfinder should have decided the duration and value of the SNLEE/ProPetro relationship cut short by Origin.

That is especially true here, where audio recordings demonstrate Origin's call transformed a theoretical, long-term concept (which never materialized) into immediate action.  That stark acceleration alone satisfies proximate cause under Fifth Circuit precedent and creates an issue of material fact for the factfinder to decide.

---

[115] ROA.6276.

[116] *Int'l Shortstop*, 939 F.2d at 1265 (defendant liable if statements influenced timing or manner of termination).

**C. The district court misapplied the law of causation.**

Causation is the crux of the district court's Order, yet the record is replete with evidence from which a jury could find that Origin's words were a substantial factor in SNLEE's loss of business. Under controlling authority, substantial-factor causation presents a jury issue whenever the plaintiff produces evidence that the defendant's disparagement played "any part, more than a scintilla," in the third-party's decision.[117]

In the context of business disparagement, causation is evaluated under the "substantial factor" test.[118]  As discussed above, SNLEE offered that Origin's statements influenced the third-party's decision, rendering summary judgment is improper. The district court ignored whether Foster's taped acknowledgment that Origin's statements were the sole basis for ProPetro's immediate action, insisting that "reasonable minds could not conclude that any action taken by Origin was a substantial factor in ProPetro terminating its relationship."[119]

The district court held that SNLEE's evidence of causation, particularly the temporal proximity between Origin's conduct and

---

[117] *See Int'l Shortstop,* 939 F.2d at 1265-68.

[118] *See Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 625 (Tex. App.—Fort Worth 2007, pet. denied), abrogated on other grounds by *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W. 2d 762, 767 (Tex.1987)).

[119] ROA.2597.

41

ProPetro's termination—was insufficient as a matter of law. The court relied on S*trong v. Univ. Healthcare Sys., L.L.C.*, for the proposition that temporal proximity alone is insufficient to establish "but for" causation.[120]

However, SNLEE's evidence was not limited to temporal proximity; it included direct evidence of ProPetro's internal deliberations and statements attributing its decision to Origin's conduct. ProPetro hired a new outside vendor—at higher cost—rather than insourcing the work. Whatever insourcing plan purportedly existed at ProPetro, the record shows no evidence that it actually happened.

If ProPetro truly intended to bring pump-packing services in-house, Origin's call would have been irrelevant. But the undisputed evidence shows that, lacking internal capacity, ProPetro pivoted to One Point Services. That conduct is inexplicable absent Origin's alarmist warnings; it also squarely contradicts the district court's rationale that ProPetro merely executed a preexisting insourcing plan as found by the lower court's order.

Origin's attempt to disprove causation rests on self-serving, litigation-inspired affidavits that cannot defeat contemporaneous evidence. Even with the Court's inferences from the evidence

---

[120] 482 F.3d 802, 808 (5th Cir. 2007).

favoring Origin (a reversible error), the record shows at least two plausible, disputed sets of material facts that should be resolved by a jury.

Foster's deposition—given while his employer was ***embroiled in separate litigation with SNLEE***—portrays Origin's statements as inconsequential.  But Foster's live audio statements, recorded before any litigation, directly contradict his later testimony. When a witness's sworn statement conflicts with his own prior inconsistent speech, credibility is for the jury. [121]  The district court erred by resolving that credibility contest in Origin's favor.

Under Texas law, causation is generally a question of fact for the jury.[122] The summary-judgment record is anything but one-sided. Direct, contemporaneous evidence ties Origin's disparagement to ProPetro's abrupt termination of SNLEE. Deposition admissions undermine Origin's "phase-out" narrative.  And the only contrary evidence—post-litigation affidavits—creates classic credibility issues reserved for the trier of fact.

Applying Rule 56 and the Fifth Circuit authorities discussed above, this Court "must reverse and remand for trial" whenever "reasonable jurors could differ on the proffered evidence … even if

---

[121] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150  (2000).
[122] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *Basic Capital Mgmt. v. Dynex Comm., Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).

the court believes that the plaintiff's evidence is less compelling."[123] This Court should reverse and remand for trial.

### D. The District Court Erred in Granting Summary Judgment on Origin's Contract Claims.

The district court granted summary judgment in favor of Origin on its breach of contract claims against SNLEE and the Mudigeres, holding that no genuine issue of material fact existed as to liability and dismissing all of SNLEE's affirmative defenses.[124] The court found no enforceable settlement or modification agreement existed because the alleged agreement was not in writing and did not satisfy the statute of frauds.[125] This Court reviews those decisions *de novo*.[126]

SNLEE presented evidence of a negotiated settlement and modification, partial performance, and promissory estoppel. After the August 2021 conference between SNLEE and Origin Amerisource and the Mudigeres funded $2.05mm,[127] Origin released liens and dismissed its suit;[128] and Origin's year-end ledger showed a $0.00 balance.[129] Origin's lawyer gave assurances that despite "voluntarily dismissing" its lawsuit, the entire balance of the loan had been

---

[123] *Shah*, 985 F.3d at 453 (quotation omitted).
[124] ROA.2604.
[125] ROA.2605.
[126] *See Shah.*, 985 F.3d, at 453.
[127] ROA.6430, 6489, 6494, 6347.
[128] ROA.6290, 6347, 6486.
[129] ROA.6489.

resolved.[130] The district court found none of those actions could support the existence of a contract or settlement agreement.

Such performance "unequivocally refers" to the settlement, satisfying any statute-of-frauds concern under the partial-performance doctrine. Under Texas law, partial performance and promissory estoppel may remove an agreement from the statute of frauds.[131] At minimum, the existence of this contract and whether the parties' conduct related to performance of it should have been decided by a jury. Especially when "[t]he question of whether an exception to the statute of frauds applies is generally a question of fact."[132]

The district court dismissed all SNLEE's remaining affirmative and equitable defenses, including offset, failure to mitigate, fraud, and prior material breach as a matter of law based on its related rulings on summary judgment.[133] SNLEE presented evidence supporting each of these defenses, and those defenses should be reinstated on Remand.

---

[130] ROA.6376, 6391, 6410, 6413, 6422.

[131] *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005); *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636 (Tex. App.—Dallas 2015, no pet.).

[132] *Duradril, LLC v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Adams v. Petrade, Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied)); *see also Midwest Compressor Systems LLC v. Highland Imperial, Inc.*, No. 05-19-01115-CV, 2021 WL 2548712, at *3 (Tex. App.—Dallas June 22, 2021, pet. denied) often involve questions of fact." (citations omitted)).

[133] ROA.2604-2610.

## CONCLUSION

SNLEE respectfully requests that this Court reverse the trial court's judgment, remand for further proceedings, and grant SNLEE all other relief to which it may be entitled. For the foregoing reasons, Appellant SNLEE respectfully requests that the Court:

1.    Reverse the district court's order denying SNLEE's motion to remand and remand the case to the 134th Judicial District Court of Dallas County, Texas; and void all orders and actions of the lower court for lack of jurisdiction.

2.    Reverse the district court's order striking SNLEE's jury demand and direct that SNLEE is entitled to a jury trial on all issues so triable;

3. Reverse the district court's order barring recovery of direct damages under the Texas UCC;

4.    Reverse the district court's order granting summary judgment in favor of Origin Bank, reinstate SNLEE's claims and defenses, and remand for trial on the merits; and

5.    Grant such other and further relief as the Court deems just and proper.

Dated: August 13, 2025

By    /s/ *Edward Jason Dennis*

Edward Jason Dennis
  Texas Bar No. 24045776
  jdennis@lynnllp.com
Hayden G. Hanson
  Texas Bar No. 24110598
  hhanson@lynnllp.com

**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, TX 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

*Attorneys for Appellant*

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 13, 2025, the foregoing brief was filed with the Clerk for the United States Court of Appeals for the Fifth Circuit, and that all counsel of record were served by electronic means on that same date.


*Attorneys for Appellant*

*/s/ Edward Jason Dennis*
Edward Jason Dennis

**CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 9,146 words, excluding the parts of the Brief exempted by Fed R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because the Brief has been prepared in conventional typeface using Microsoft Word in Palatino Linotype A 14-point for text; 12-point for footnotes.

Date: August 13, 2025.

/s/ Edward Jason Dennis
Edward Jason Dennis